IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | |
|---|---|
| REBECCA MILLER<br>1101 Turner Road<br>Lynchburg, Ohio 45142<br><br>Plaintiff,<br><br>v.<br><br>AIRBORNE MAINTENANCE AND<br>ENGINEERING SERVICES, INC.<br>145 Hunter Drive<br>Wilmington, Ohio 45177<br><br>**Serve Also:**<br>Airborne Maintenance and<br>Engineering Services, Inc.<br>c/o Corporation Service Company<br>1160 Dublin Road<br>Suite 400<br>Columbus, Ohio 43215<br><br>Defendant. | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Rebecca Miller, by and through undersigned counsel, states and avers the following for the Complaint against the Defendant:

**PARTIES AND VENUE**

1. Miller is a resident of the City of Lynchburg, County of Clinton, State of Ohio.

2. At all times herein, Miller was acting in the course and scope of her employment.

3. Airborne Maintenance and Engineering Services, Inc. ("Airborne") is a foreign corporation that does business at 145 Hunter Drive, Wilmington, Ohio 45177.

4. Airborne is, and at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.

5. All of the material events alleged in this Complaint occurred in Clinton County, Ohio.

6. Airborne hires citizens of the State of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Airborne comports with due process.

7. The claims herein arose from or relates to the contacts of Airborne with Ohio residents, thereby conferring specific jurisdiction over Airborne.

8. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Miller is alleging a Federal Law Claim under The Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.* The Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

9. This Court has supplemental jurisdiction over Miller's state law claims pursuant to 28 U.S.C. § 1367 as Miller's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11. On or about September 26, 2025, Miller received a Notice of Right to Sue letter from the EEOC regarding the charge of discrimination Miller filed against Airborne. Attached as Exhibit A.

12. Miller has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

13. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

14. Miller is a former employee of Airborne.

15. Miller was hired by Airborne in or about October 2023.

16. Miller was employed by Airborne in the position of Tool Clerk.

17. Miller suffers from Generalized Anxiety Disorder ("Miller's Disability").

18. Miller's Disability affects the neurological body system.

19. Miller's Disability is a mental or psychological disorder.

20. Miller's Disability is a disease.

21. Miller's Disability relates to an intellectual disability.

22. Miller's Disability is a mental impairment.

23. Miller's Disability substantially limits one or more major life activities.

24. Miller has a record of Miller's Disability.

25. As a result of Miller's Disability, Miller is and was considered disabled within the meaning of the ADA.

26. As a result of Miller's Disability, Miller is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

27. Miller disclosed Miller's Disability to Defendant.

28. In the alternative, Defendant perceived Miller as being disabled.

29. In the alternative, the Defendant perceived that Miller's Disability constituted a mental impairment.

30. In the alternative, Defendant perceived Miller's Disability to substantially impair one or more major life activities, including working.

31. Despite this actual or perceived disabling condition, Miller was still able to perform the essential functions of her job.

32. Miller's Disability sometimes required her to take days off work to treat the symptoms of Miller's Disability.

33. Between October 2023 and June 2024, Miller requested five days off work to care for Miller's Disability ("First Accommodation Request").
34. Miller made the First Accommodation Request to Jason Dumford.
35. Dumford was Miller's supervisor.
36. Dumford is not disabled.
37. Miller's First Accommodation Request would not cause Defendant an undue hardship.
38. Before denying Miller's First Accommodation Request, Defendant did not determine whether Miller's First Accommodation Request would cause Defendant an undue hardship.
39. Defendant has no contemporaneously created documents reflecting any effort to determine whether Miller's First Accommodation Request would cause an undue hardship.
40. Before denying Miller's First Accommodation Request, Defendant did not determine the cost of Miller's First Accommodation Request.
41. Defendant has no contemporaneously created documents reflecting any effort to determine the cost of Miller's First Accommodation Request.
42. Before denying Miller's First Accommodation Request, Defendant did not determine the cost of providing any accommodation besides Miller's First Accommodation Request.
43. Defendant has no contemporaneously created documents reflecting any effort to determine the cost of providing any accommodation besides Miller's First Accommodation Request.
44. Defendant did not seek outside funding to cover the cost of any undue financial hardship.
45. Defendant has no contemporaneously created documents reflecting any effort to seek outside funding to cover the cost of any undue financial hardship.
46. Alternatively, Defendant did not offer Miller the opportunity to pay for any financial hardship that would result from Miller's First Accommodation Request.

47. Miller's First Accommodation Request was reasonable.

48. Defendant did not engage in any conversation with Miller for any alternative options for Miller's First Accommodation Request.

49. In response to Miller's First Accommodation Request, Defendant failed to participate in any interactive process.

50. Defendant denied Miller's First Accommodation Request.

51. Defendant did not provide Miller's First Accommodation Request.

52. Defendant did not provide Miller with an alternative accommodation in response to Miller's First Accommodation Request.

53. Defendant did not provide Miller with the opportunity to pay for any undue financial burden for a disability accommodation.

54. Defendant could have provided light duty as a reasonable accommodation.

55. Defendant has provided light duty to employees prior to Miller's First Accommodation Request.

56. Defendant did not provide Miller with light duty.

57. Defendant could have provided time off as a reasonable accommodation.

58. Defendant has provided time off to employees prior to Miller's First Accommodation Request.

59. Defendant did not provide Miller with time off.

60. During Miller's employment, Defendant never explained to Miller why the First Accommodation Request was denied.

61. Alternatively, during Miller's employment, Defendant only explanation to Miller regarding why the Accommodation Request was denied was to say that Defendant did not have any accommodation available.

62. In response to the First Accommodation Request, Dumford told Miller that she could take the requested days off work.

63. In response to the First Accommodation Request, Dumford gave Miller attendance "occurrences" for the five days of work that she missed.

64. In response to the First Accommodation Request, Dumford threatened to terminate Miller's employment.

65. Paragraphs 62 to 64 will be referred to collectively as the "Retaliation."

66. The Retaliation was retaliation for Miller's First Accommodation Request.

67. The Retaliation was because of Miller's Disability.

68. By doing the Retaliation, Defendant made it less likely for a reasonable employee to request reasonable disability accommodations.

69. The Retaliation constitutes retaliation.

70. The Retaliation constitutes disability discrimination.

71. Defendant willfully engaged in the Retaliation.

72. Defendant intentionally engaged in the Retaliation.

73. The Retaliation was an adverse action.

74. The Retaliation was an adverse employment action.

75. Defendant engaged in the Retaliation with the intent to make Miller quit.

76. Airborne has a policy of scheduling two Tool Clerks to work simultaneously.

77. Alternatively, Airborne does not have a policy of scheduling two Tool Clerks to work simultaneously.

78. Between September and November 2024, Airborne scheduled Miller to work alone during each shift she worked for a three-week period.

79. Between September and November 2024, Airborne scheduled Karen Pooler and Shelby Sparks to work together during most shifts they worked.

80. Pooler was a Tool Clerk and Miller's coworker.

81. Pooler is not disabled.

82. Sparks was a Tool Clerk and Miller's coworker.

83. Sparks is not disabled.

84. Airborne did not schedule Pooler to work alone.

85. Airborne did not require Pooler to work alone.

86. Airborne did not schedule Sparks to work alone.

87. Airborne did not require Sparks to work alone.

88. Paragraphs 76 to 87 will be referred to collectively as the "Disparate Scheduling."

89. The Disparate Scheduling was based on Miller's Disability.

90. Airborne has a policy prohibiting discrimination in the workplace ("Discrimination Policy").

91. The Disparate Scheduling is a violation of the Discrimination Policy.

92. Alternatively, the Disparate Scheduling is not a violation of the Discrimination Policy.

93. Alternatively, the Disparate Scheduling is permitted by Defendant.

94. The Disparate Scheduling constitutes disability discrimination.

95. Defendant willfully engaged in the Disparate Scheduling.

96. Defendant intentionally engaged in the Disparate Scheduling.

97. The Disparate Scheduling was an adverse action.

98. The Disparate Scheduling was an adverse employment action.

99. Before November 2024, Miller informed Dumford that working alone was exacerbating Miller's Disability.

100. Before November 2024, Miller requested that she be scheduled to work with another Tool Clerk on future shifts ("Second Accommodation Request").

101. Miller's Second Accommodation Request would not cause Defendant an undue hardship.

102. Before denying Miller's Second Accommodation Request, Defendant did not determine whether Miller's Second Accommodation Request would cause Defendant an undue hardship.

103. Defendant has no contemporaneously created documents reflecting any effort to determine whether Miller's Second Accommodation Request would cause an undue hardship.

104. Before denying Miller's Second Accommodation Request, Defendant did not determine the cost of Miller's Second Accommodation Request.

105. Defendant has no contemporaneously created documents reflecting any effort to determine the cost of Miller's Second Accommodation Request.

106. Before denying Miller's Second Accommodation Request, Defendant did not determine the cost of providing any accommodation besides Miller's Second Accommodation Request.

107. Defendant has no contemporaneously created documents reflecting any effort to determine the cost of providing any accommodation besides Miller's Second Accommodation Request.

108. Defendant did not seek outside funding to cover the cost of any undue financial hardship.

109. Defendant has no contemporaneously created documents reflecting any effort to seek outside funding to cover the cost of any undue financial hardship.

110. Alternatively, Defendant did not offer Miller the opportunity to pay for any financial hardship that would result from Miller's Second Accommodation Request.

111. Miller's Second Accommodation Request was reasonable.

112. Defendant did not engage in any conversation with Miller for any alternative options for Miller's Second Accommodation Request.

113. In response to Miller's Second Accommodation Request, Defendant failed to participate in any interactive process.

114. Defendant denied Miller's Second Accommodation Request.

115. Defendant did not provide Miller's Second Accommodation Request.

116. Defendant did not provide Miller with an alternative accommodation in response to Miller's Second Accommodation Request.

117. Defendant did not provide Miller with the opportunity to pay for any undue financial burden for a disability accommodation.

118. Defendant could have provided light duty as a reasonable accommodation.

119. Defendant has provided light duty to employees prior to Miller's Second Accommodation Request.

120. Defendant did not provide Miller with light duty.

121. Defendant could have provided time off as a reasonable accommodation.

122. Defendant has provided time off to employees prior to Miller's Second Accommodation Request.

123. Defendant did not provide Miller with time off.

124. During Miller's employment, Defendant never explained to Miller why the Second Accommodation Request was denied.

125. Alternatively, during Miller's employment, Defendant only explanation to Miller regarding why the Second Accommodation Request was denied was to say that Defendant did not have any accommodation available.

126. On or about November 5, 2024, Miller contacted Michelle Lagore to report a mental health crisis related to Miller's Disability and request leave under the Family and Medical Leave Act ("FMLA Request").

127. Lagore is a worker in Airborne's Human Resources department.

128. Lagore was Miller's supervisor.

129. Lagore is not disabled.

130. On or about November 5, 2024, Miller worked for Airborne for at least 12 months.

131. On or about November 5, 2024, had at least 1,250 hours of service for Airborne during the previous 12 months.

132. On or about November 5, 2024, Miller qualified for FMLA leave in connection with her own serious medical condition.

133. On or about November 5, 2024, Miller was eligible for FMLA leave due to her own serious medical condition.

134. On or about November 5, 2024, Miller was entitled to utilize FMLA leave due to her own serious medical condition.

135. On or about November 5, 2024, Lagore gave Miller a FMLA certification and requested that Miller have her physician complete it and return it by November 20, 2024.

136. On or about November 14, 2024, Miller entered an in-patient treatment center to receive care for Miller's Disability.

137. On or about November 14, 2024, Miller's physician completed and returned the FMLA certification to Airborne.

138. Defendant terminated Miller's employment on November 19, 2024 ("Termination").

139. Defendant has a progressive disciplinary policy.

140. Defendant used a progressive disciplinary policy.

141. Defendant used a progressive disciplinary policy for employees who are not disabled.

142. Defendant used a progressive disciplinary policy for employees who have not requested reasonable disability accommodations.

143. Defendant used a progressive disciplinary policy for employees who have not requested and/or utilized FMLA leave.

144. Under the progressive disciplinary policy, Miller had not been given a verbal warning prior to the Termination.

145. Under the progressive disciplinary policy, Miller had not been given a written warning prior to the Termination.

146. Under the progressive disciplinary policy, Miller had not been given a final written warning prior to the Termination.

147. Under the progressive disciplinary policy, Miller had not been given a suspension prior to the Termination.

148. Prior to terminating Miller, Defendant never issued any written communication criticizing Miller for any reason.

149. Defendant's termination of Miller's employment was retaliation for Miller's Requests for Accommodation.

150. Defendant's termination of Miller's employment was retaliation for Miller's FMLA Request.

151. Defendant terminated Miller's employment because of Miller's Disability.

152. By terminating Miller's employment, Defendant made it less likely for a reasonable employee to request reasonable disability accommodations, including the utilization of FMLA leave.

153. The Termination constitutes retaliation.

154. The Termination constitutes disability discrimination.

155. Defendant knowingly skipped progressive disciplinary steps in terminating Miller's employment.

156. Defendant knowingly terminated Miller's employment.

157. Defendant knowingly took adverse employment actions against Miller.

158. Defendant knowingly took adverse actions against Miller.

159. Defendant intentionally skipped progressive disciplinary steps in terminating Miller's employment.

160. Defendant intentionally terminated Miller's employment.

161. Defendant intentionally took adverse employment actions against Miller.

162. Defendant intentionally took adverse actions against Miller.

163. Defendant knew that skipping progressive disciplinary steps in terminating Miller's employment would cause Miller harm, including economic harm.

164. Defendant knew that terminating Miller's employment would cause Miller harm, including economic harm.

165. Defendant willfully skipped progressive disciplinary steps in terminating Miller's employment.

166. Defendant willfully terminated Miller's employment.

167. There was a causal connection between Miller's Disability and the Termination.

168. There was a causal connection between Miller's Accommodation Requests and the Termination.

169. There was a causal connection between Miller's FMLA Request and the Termination.

170. As a result of Defendant's unlawful acts, Miller has suffered, and will continue to suffer, pecuniary harm.

171. As a result of Defendant's unlawful acts, Miller has suffered, and will continue to suffer, emotional distress.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

172. Miller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

173. Defendant took adverse employment actions against Miller based on Miller's Disability.

174. Defendant violated the ADA when it took adverse employment actions against Miller based on Miller's Disability.

175. Defendant violated the ADA when it engaged in disparate treatment based on Miller's Disability.

176. Miller suffered damages as a proximate result of Defendant's conduct based on Miller's Disability.

177. As a direct and proximate result of Defendant's disability-based conduct, Miller has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

178. In discriminating against Miller based on disability, Defendant acted with malice or reckless indifference to the rights of Miller, thereby entitling Miller to an award of punitive damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

179. Miller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

180. Defendant took adverse employment actions against Miller based on Miller's disability.

181. Defendant violated R.C. § 4222.02(A) when it took adverse employment actions against Miller based on Miller's Disability.

182. Defendant violated R.C. § 4222.02(A) when it engaged in disparate treatment based on Miller's Disability.

183. Miller suffered damages as a proximate result of Defendant's conduct based on Miller's Disability.

184. As a direct and proximate result of Defendant's disability-based conduct, Miller has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

185. In discriminating against Miller based on disability, Defendant acted with malice or reckless indifference to the rights of Miller, thereby entitling Miller to an award of punitive damages.

## COUNT III: DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

186. Miller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

187. As a result of Miller's Disability, Miller is and was considered disabled within the meaning of the ADA.

188. Defendant violated the ADA when no one at Airborne engaged in an interactive process to find a reasonable accommodation for Miller.

189. Defendant violated the ADA when it did not provide a reasonable accommodation for Miller.

190. Defendant violated the ADA when it did not provide Miller with the opportunity to pay for any undue financial burden for a disability accommodation.

191. As a direct and proximate result of Defendant's failure to reasonably accommodate Miller, Miller suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

192. In refusing to accommodate Miller, Defendant acted with malice or reckless indifference to the rights of Miller, thereby entitling Miller to an award of punitive damages.

**COUNT IV: DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE IN VIOLATION OF R.C. § 4112.01 *et seq.***

193. Miller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

194. As a result of Miller's Disability, Miller is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

195. Defendant violated R.C. § 4112.01 *et seq.* when no one at Airborne engaged in an interactive process to find a reasonable accommodation for Miller.

196. Defendant violated R.C. § 4112.01 *et seq.* when they did not provide a reasonable accommodation for Miller.

197. Defendant violated R.C. § 4112.01 *et seq.* when they did not provide Miller with the opportunity to pay for any undue financial burden for a disability accommodation.

198. As a direct and proximate result of Defendant's failure to reasonably accommodate Miller, Miller suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

199. In refusing to accommodate Miller, Defendant acted with malice or reckless indifference to the rights of Miller, thereby entitling Miller to an award of punitive damages.

**COUNT V: RETALIATION IN VIOLATION OF THE ADA**

200. Miller restates each and every prior paragraph of this complaint, as if it were fully restated herein.

201. Miller engaged in protected activity under the ADA by requesting a reasonable accommodation from Airborne.

202. As a direct and proximate result to Miller's request for a reasonable disability accommodation, Defendant took adverse employment actions against Miller.

203. As a direct and proximate result to Miller's request for a reasonable disability accommodation, Defendant took adverse actions against Miller.

204. As a direct and proximate result of Defendant's retaliatory conduct against and termination of Miller's employment, Miller suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

205. In retaliating against Miller, Defendant acted with malice or reckless indifference to the rights of Miller, thereby entitling Miller to an award of punitive damages.

**COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**

206. Miller restates each and every prior paragraph of this complaint, as if it were fully restated herein.

207. Miller engaged in protected activity under R.C. § 4112.01 *et seq.* by requesting a reasonable disability accommodation from Airborne.

208. As a direct and proximate result to Miller's request for a reasonable disability accommodation, Defendant took adverse employment actions against Miller.

209. As a direct and proximate result to Miller's request for a reasonable disability accommodation, Defendant took adverse actions against Miller.

210. As a direct and proximate result of Defendant's retaliatory conduct against and termination of Miller's employment, Miller suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

211. In retaliating against Miller, Defendant acted with malice or reckless indifference to the rights of Miller, thereby entitling Miller to an award of punitive damages.

## COUNT VII: FMLA INTERFERENCE

212. Miller restates each and every prior paragraph of this complaint, as if it were fully restated herein.

213. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected, unpaid leave for qualified medical and family situations.

214. Airborne is a covered employer under the FMLA.

215. During her employment, Miller qualified for FMLA leave.

216. During her employment, Miller took FMLA leave.

217. Under the FMLA, Airborne had a duty to designate Miller's qualified leave as FMLA leave.

218. Under the FMLA, Airborne had a duty to use Miller's FMLA entitlement to cover any absences related to her qualified FMLA leave.

219. Airborne failed to designate Miller's leave as FMLA leave.

220. Airborne failed to use Miller's FMLA entitlement to cover FMLA-related absences.

221. Airborne terminated Miller's employment while Miller remained on FMLA leave.

222. As a direct and proximate result of Airborne's unlawful acts, Miller is entitled to all damages provided for under 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## COUNT VIII: FMLA RETALIATION

223. Miller restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

224. During her employment, Miller utilized FMLA leave.

225. After Miller utilized her qualified FMLA leave, Airborne retaliated against her.

226. Airborne retaliated against Miller by terminating her employment.

227. Airborne willfully retaliated against Miller in violation of 29 U.S.C. § 2615(a).

228. As a direct and proximate result of Airborne's wrongful conduct, Miller is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Rebecca Miller demands from Defendant the following:

(a) Issue a permanent injunction:

(i) Requiring Airborne to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against each Defendant of compensatory and monetary damages to compensate Miller for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Miller claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Hannah Martin*
Hannah Martin (0103992)
Milan Gligorevic (0104528)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax: (216) 291-5744
Email: hannah.martin@spitzlawfirm.com
milan.gligorevic@spitzlawfirm.com

*Attorneys for Plaintiff Rebecca Miller*

## JURY DEMAND

Plaintiff Rebecca Miller demands a trial by jury by the maximum number of jurors permitted.

*/s/ Hannah Martin*
Hannah Martin (0103992)
Milan Gligorevic (0104528)